## BROWN et al. v. PORTNEUF–MARSH VALLEY IRR. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1925.)

No. 4405.

**1. Waters and water courses ☞222—Statutory provisions are part of all contracts under Carey Act.**

All parties to contracts relating to an irrigation project under the Carey Act (Comp. St. § 4685 et seq.) are bound by all the provisions of the acts of Congress and of the state on the subject.

**2. Waters and water courses ☞258—Lien of construction company under Carey Act for payments due for water rights superior to that of assessments made by operating company.**

C. S. Idaho, § 3019, providing that any person, company, or association furnishing water for any tract of land shall have a first and prior lien on the water right and land on which the water is used for all deferred payments for said water right, inures to the benefit of a company constructing an irrigation system under the Carey Act (Comp. St. § 4685 et seq.), or to bondholders furnishing money for the work, to secure whom it assigned its rights, and such lien *held* superior to the lien of assessments made by an operating company for the expense of maintaining and operating the system.

Appeal from the District Court of the United States for the Eastern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit in equity by Henry W. Brown and John R. Chapin, trustees, against the Portneuf–Marsh Valley Irrigation Company and another. Decree determining priority of liens, from which complainants appeal. Modified and affirmed.

For opinion below, see 299 F. 338.

John A. Marshall, of Salt Lake City, Utah, and Edwin Snow, of Boise, Idaho, for appellants.

D. C. McDougall, I. E. McDougall, and H. O. McDougall, all of Pocatello, Idaho, for appellee Portneuf-Marsh Valley Irr. Co.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. This is one of a number of similar cases that have heretofore reached and been considered by this court. It grows out of the establishment and construction of an irrigation system in Bannock county, Idaho, under and in pursuance of an act of Congress approved August 18, 1894 (28 Stat. 372, 422), and amendments thereto (Comp. St. § 4685 et seq.), known as the Carey Act, and certain legislation of the state of Idaho. The provisions of the acts of Congress with relation to the subject and certain provisions of the legislation of the state of Idaho will be found set out in the decision of this court in the case of Twin Falls-Salmon River Land & Water Co. et al. v. Caldwell et al., 242 F. 177, 178, 179, 180, 181, 182, 155 C. C. A. 17, and we need not, therefore, take the space to repeat them. The project involved in the present case originally covered about 20,000 acres of land in the vicinity of Downey, in the state of Idaho, that had been set apart by the government by virtue of the act of Congress referred to, and involved the construction of a reservoir at the headwaters of the Portneuf river, and a system of canals by which both the stored water and the natural flow of the stream were to be diverted and applied to the land.

The appellee Portneuf-Marsh Valley Irrigation Company, a corporation, was the construction company, and the appellee Portneuf-Marsh Valley Canal Company, a corporation, was the operating company, organized by the construction company, with a capital stock of 20,000 shares, to which the whole irrigation system was added, with certain stipulations agreed to by both parties thereto. The acreage contemplated at the beginning of the enterprise was subsequently found to be greater than could be supplied with water, and it was accordingly reduced to 14,000 acres, of which latter area the construction company succeeded in selling water rights for only about 12,240 acres. The operating company, therefore, continued to hold and now holds 1,760 shares of its own stock, representing a proportionate interest in the irrigation system, to build which it became necessary for the construction company to secure money with which to build it, and to do that, it became necessary for it to mortgage the system itself and to pledge certain collateral as additional security for the bonds it issued. The appellants became trustees for such bondholders, and brought this suit to foreclose the mortgage and the pledged collateral.

The contract between the state of Idaho, through its state board of land commissioners, and the construction company, was entered into June 3, 1908, and provided among other things that the construction company should "sell or cause to be sold to the person or persons filing upon any of the lands herein described, or to the owners of other lands not described herein, but which are or may be susceptible for irrigation from their canal system by good and sufficient contract

of sale with right of possession and enjoyment by the purchaser pending its fulfillment, a water right or share in said canal for each and every acre filed upon or purchased from the State or acquired from the United States, or held in private ownership. * * * Such water rights or shares shall be sold to the persons or person aforesaid for lands included in said segregation under the provisions of the 'Carey Act' and for lands adjacent thereto, or that can or may be irrigated from said irrigation system when completed, all at a price not to exceed $35 per share, except as is hereinafter provided, the same to be paid for as follows: In cash at time of sale ($3.00) three dollars per share, and the remainder in nine equal annual installments, each bearing the interest at the rate of six per cent. (6%) per annum, interest payable annually."

The contract between the state and the construction company also provided as follows:

"It being necessary to provide a convenient method of transferring the ownership and control of said canal and irrigation works from the said party of the second part herein to the purchasers of said water rights in said canal, and for determining their rights among themselves and between said purchasers and the party of the second part herein, and for the purpose of operation and maintaining said canal during the period of construction and afterwards, and for the purpose of levying and collecting tolls, charges, and assessments for managing said canal, and for the management and operation thereof, it is hereby provided that, as soon as said lands are ordered thrown open for settlement, a corporation to be known as the Portneuf-Marsh Valley Company, Limited, shall be formed at the expense of the party of the second part, the articles of incorporation of said company to be approved by the attorney of the state of Idaho; that the authorized capital of said corporation shall be twenty thousand (20,000) shares, which amount is intended to represent one share for each acre of land which may hereafter be irrigated from said canal. All persons, who prior to the formation of such corporation have purchased or acquired water rights of water from said second party for the irrigation of lands embraced in this contract and being then the owners of such rights or shares, shall be entitled to receive and have issued to them, shares in such corporation so to be formed, equal in number to the water rights or shares of water then owned and held by such persons, and the remainder of the capital stock of such corporation shall be issued

to the party of the second part in consideration of the covenants and agreements herein contained in order to enable it to deliver to purchasers of water rights the shares of stock representing the same. Said shares of stock, however, shall have no voting and shall be without force or effect until they have been sold or contracted to be sold to the purchasers of land under said irrigation works.

"At the time of the purchase of any water right after the formation of said corporation, there shall be issued to the purchaser thereof, one share of the capital stock of said corporation for each acre of land entered or filed upon. That the said party of the second part herein shall, in case said water rights or shares of stock are not fully paid for, require the indorsement and delivery to it of said stock, and shall at the same time require of said purchaser an agreement that until thirty-five per cent. (35%) of the purchase price of said stock has been paid, the said party of the second part therein shall vote said stock in such manner as it may deem proper at all meetings of the stockholders of said corporation."

It further provided, among other things, as follows:

"The right, title and interest of the second party in the said works and irrigation system and in the said lands may be mortgaged, as provided by the said acts of Congress and the laws of the state of Idaho, hereinbefore referred to; the form of such mortgage to be approved by the Attorney General of Idaho. * * *

"It is hereby understood and expressly agreed that this contract is made and entered into by virtue of the provisions and subject to all of the conditions of an act of Congress, commonly known as the 'Carey Act,' approved August 18, 1894, and the acts amendatory thereto and the laws of the state of Idaho, accepting the terms and provisions of the said 'Carey Act,' and the contract between the United States and the state of Idaho, segregating from the public domain the lands herein designated as Carey Act lands, and that such laws and contract are as much a part of this contract as if specifically herein set forth."

The record shows that prior to the sale of the construction company of any of the water rights, its board of directors and stockholders authorized a bond issue in the sum of $300,000, to be secured by a trust deed upon the appropriated water and the irrigation system then being constructed, which instrument provided as follows:

"Before any bonds shall be issued under

this instrument there shall be pledged hereunder with Colonial Trust & Savings Bank, one of the trustees, water contracts owned by the company or notes secured by mortgage of deed of trust upon land and water rights thereunto attached (hereinafter called 'notes'), or cash money, or partly water contracts and partly accrued notes, or cash moneys, aggregating at par one and one-half (1½) times the par value of the installment of bonds of this issue then demanded by the company and issued by the said trustee hereunder. But the said trustee shall require the opinion of counsel, selected by it and paid by the company, to the effect that said water contracts (if water contracts are so deposited) are and constitute direct liens upon real estate capable of being irrigated from the irrigation system of the company, or that said notes (if notes are so deposited) are amply secured by mortgages or trust deeds which are direct liens upon real estate capable of being irrigated from the irrigation system of the company to which lands have been attached water rights sufficient to irrigate them; and both such land and water shall be subjected to the lien of such mortgage, or deed of trust."

The record shows that in the year 1915 the irrigation system was completed and accepted by the state of Idaho, prior to which time the right reserved in the contract between the state and the construction company, reserving to the latter the right to vote the settlers' stock in that company, was by them waived. Upon the completion of the system and its acceptance by the state, a contract was entered into between the construction company and the canal company, which was ratified by the stockholders of the canal company, and, upon the joint petition of the two companies, was approved by the state land board of Idaho, subsequent to which time the system was operated by the construction company until January 1, 1916, when the whole property was conveyed by the construction company to the canal company, since which time the latter has been in possession and control of it.

Pursuant to its obligation to maintain and operate it, and to meet the necessary expense thereof, the canal company, from time to time, pursuant to the provisions of the state contract, the settlers' contracts, and the by-laws of the operating company, levied assessments upon the stock issued to the settlers, resulting in its sale for delinquency in many instances and its purchase by the canal company at such sales, which stock so purchased, amounting in the aggregate to 5,495.2

shares, that company claims to own, together with the proportionate beneficial interest thereby represented in the irrigation system, subject to the privilege of redemption under certain circumstances. In some instances the trustees in the present case foreclosed their lien provided for in the contracts upon the land and water stock, and became the purchaser of both the land and the water right represented by the stock, and in other cases acquired the land and water right by deed directly from the settlers without suit.

The appellants sued as successors in interest of the original trustees of the bondholders. The defendant canal company claimed, both by its pleading and in evidence, that in maintaining and operating the irrigation system, and in distributing its waters, it had levied each year upon its stockholders certain assessments upon the stock, and that in many instances the assessments were not paid and that such stock was sold for such nonpayment and acquired by the canal company. The real controversy between the respective parties is the relative priority of lien upon the water stock and the proportionate interest in the irrigation system represented by it. The decree appealed from awarded the canal company a prior lien upon various portions of the stock based upon unpaid assessments thereon, aggregating $89,417.64. Those assessments the appellants claim to have been void, but we do not find it necessary to decide that question.

In the case of Twin Falls-Salmon River Land & Water Co. v. Caldwell, 242 F. 177, 190, 155 C. C. A. 17, we said, among other things: "The construction of the system necessarily required the furnishing from some source of the money with which to do the work; the compensation to the construction company for the liability assumed by it in procuring the required money and in doing the work must of necessity come from the sale of the lands and of rights to the appropriated water; and of that fact both Congress and the state were, of course, well aware, as is shown by the legislation that has been referred to. In the execution of the project, the contract between the state and the construction company, and the contract between that company and the settlers, were made. Manifestly, they are to be read together and in connection with the statutes of Congress and of the state, to which the contracts expressly referred. The construction company, the settlers, and the parties who furnished the money for the building of the system, receiving as security therefor the liens authorized both by Congress and the

state, are therefore, each and all, charged with full knowledge of the laws and of the provisions of the contracts." That is the law of this court respecting such cases, it never having been overruled or questioned so far as we know.

[1, 2] We must therefore take it that the appellees are bound by all of the provisions of the respective contracts, and by all of the provisions of the acts of Congress, and all of the provisions of the acts of the state of Idaho upon the subject. Among the latter is section 3019 of the Compiled Statutes of Idaho, which reads as follows:

"Any person, company or association, furnishing water for any tract of land, shall have a first and prior lien on said water right and land upon which said water is used, for all deferred payments for said water right; said lien to be in all respects prior to any and all other liens created or attempted to be created by the owner and possessor of said land; said lien to remain in full force and effect until the last deferred payment for the water right is fully paid and satisfied according to the terms of the contract under which said water right was acquired."

The learned judge of the court below held that that section of the Idaho statute is not applicable to the case, and, even if applicable, was waived by the contract between the state and the construction company, and by the articles of incorporation of the canal company, and by its by-laws.

The first and main reason assigned by the trial court in its opinion for such holding is that the priority of liens thereby given to the person or company furnishing the water for the irrigation of the land is only over liens "created or attempted to be created by the owner and possessor" of such land.

We think that construction wholly inadmissible. The very purpose, if not the sole purpose, both of Congress and of the state, in enacting the legislation in question, was the supplying of dry and practically valueless public land with water, thereby putting it under profitable cultivation, to do which extensive and expensive irrigating systems were obviously necessary, the money for which of necessity had to be provided, and, if borrowed had to be satisfactorily secured. Those who furnished the money were, in our opinion, obviously and necessarily the parties to whom the statute gave priority of lien, and in the nature of things necessarily had to do so, if the money was to be furnished. That such was the manifest intention of the statute is, we think, conclusively shown by its concluding clause, which declares: "Said lien to remain in full force and effect until the last deferred payment for the water right is fully paid and satisfied, according to the terms of the contract under which said water right was acquired."

The intermediate clause, "Said lien to be in all respects prior to any and all other liens created or attempted to be created by the owner and possessor of said land," merely gives expression to what would otherwise be clearly the legal effect of the section. Not only so, but the contract between the state and the construction company expressly declares: "That this contract is made and entered into by virtue of the provisions and subject to * * * the laws of the state of Idaho accepting the terms of the 'Carey Act,' * * * and that such laws * * * are as much a part of this contract as if specifically set forth." And section 8 of article VIII of the by-laws of the canal company expressly declares that "all shares of this corporation shall be held subject to the rights of the Portneuf-Marsh Valley Irrigation Company, Limited, until the amount due to such company, its successors or assigns, shall have been fully and finally paid, as provided in the contract between said corporation and the purchasers of shares, and as provided in the contract between the said Portneuf-Marsh Valley Irrigation Company, Limited, and the state of Idaho."

We are of the opinion that, upon the case made by the record, the bondholders are legally and equitably entitled to a prior lien for the amount due thereon on the entire irrigation system in question and its waters, and upon the interest in the said system and waters represented by the stock acquired by and held in the treasury of the canal company.

The case is accordingly remanded, with directions to the court below to modify the decree in accordance with the views above expressed, and, as so modified, it will stand affirmed.